EAG:TH/EEA/GK
F. #2014R01255

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

17-CR-434 (S-2) (ARR)

JOSE OSVALDO MELENDEZ-ROJAS,
ROSALIO MELENDEZ-ROJAS,
also known as "Leonel," "Wacho" and "El Guacho,"
FRANCISCO MELENDEZ-PEREZ,
also known as "Paco" and "el Mojarra," and
ABEL ROMERO-MELENDEZ,
also known as "La Borrega" and "Borrego,"

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE GOVERNMENT'S MEMORANDUM OF LAW
IN OPPOSITION TO THE DEFENDANTS'
MOTIONS FOR ACQUITTAL OR A NEW TRIAL

RICHARD P. DONOGHUE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Tanya Hajjar
Erin E. Argo
Gillian Kassner
Assistant U.S. Attorneys
(Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in opposition to the post-trial motions of defendants Jose Osvaldo Melendez-Rojas, Rosalio Melendez-Rojas, and Abel Romero-Melendez.[1] On March 13, 2020, following a two-week jury trial, the defendants were convicted of each of the offenses charged against them in the second superseding indictment. They now have moved for judgments of acquittal pursuant to Federal Rule of Criminal Procedure 29 and Abel Romero-Melendez has also moved for a new trial pursuant to Federal Rule of Criminal Procedure 33. See ECF Docket Entry Nos. 225 and 226 ("Abel Mot."); 228 ("Osvaldo Mot."); 230 ("Rosalio Mot."). For the reasons set forth below, the defendants' motions are meritless and should be denied in their entirety.

[1] The government previously filed an opposition to the defendant Francisco Melendez-Perez's motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, which is incorporated by reference. See ECF Docket Entry No. 227.

## BACKGROUND

The defendants were charged in an 18-count superseding indictment with, among other crimes, alien smuggling conspiracy in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I); conspiracy to transport minors to engage in prostitution in violation of 18 U.S.C. § 2423(e); sex trafficking conspiracy in violation of 18 U.S.C. § 1594(c); and sex trafficking in violation of 18 U.S.C. § 1591.

Over the course of a two-week trial, the government called 16 witnesses, including six victim-witnesses, who described how the defendants transported them to the United States and used fraud, physical violence and threats to coerce them to work in prostitution. The defendants used false promises of love, marriage, and a better life to lure the victims into romantic and sexual relationships, and isolated their victims from their families by bringing them to live with them at the defendants' homes in Tenancingo, Mexico before smuggling them into the United States. The defendants then used brutal beatings, threats of violence, forced abortions and psychological manipulation to compel their victims into prostitution, and financially benefitted from the proceeds generated from that prostitution. Through this evidence, as well as voluminous border crossing records, wire transfer records, photographs, and other documents, the government proved the defendants' guilty beyond a reasonable doubt.[2]

On March 13, 2020, the jury returned its unanimous verdict, convicting the defendants of all counts in the superseding indictment.

---

[2] Because the Court is familiar with the record and evidence in this case, the government details below only those facts relevant to adjudication of the defendants' post-trial motions.

ARGUMENT

Pursuant to Rule 29 of the Federal Rules of Criminal Procedure, defendants Jose Osvaldo Melendez-Rojas, Rosalio Melendez-Rojas, and Abel Romero-Melendez move for judgments of acquittal. Abel Romero-Melendez has also moved for a new trial pursuant to Federal Rule of Criminal Procedure 33. In essence, the defendants contend that the jury's verdict should be overturned because the victim-witnesses who testified were not credible. These arguments were made at trial and rejected by the jury in reaching their verdict. The defendants' challenges to the credibility of the victim-witnesses are not appropriate for consideration on a motion pursuant to Rules 29 and 30 and are, ultimately, entirely without merit.

I. The Defendants' Motions for Acquittal Under Rule 29 Should Be Denied

A. Legal Standard

Under Rule 29, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29. A judgment of acquittal may be granted only if "no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." United States v. Cassese, 428 F.3d 92, 98 (2d Cir. 2005). Put differently, a jury verdict must be allowed to stand if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000) (emphasis in original) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). "In challenging the sufficiency of the evidence, the defendant faces an uphill battle, and bears a very heavy burden." United States v. Crowley, 318 F.3d 401, 407 (2d Cir. 2003) (internal quotation marks and citation omitted).

In ruling on a Rule 29 motion, the evidence must be viewed in the light most favorable to the government, with all reasonable inferences drawn in its favor. See United States v. Henry, 325 F.3d 93, 103 (2d Cir. 2003). Moreover, the reviewing court must "resolve all issues of credibility in the government's favor." United States v. Canady, 126 F.3d 352, 356 (2d Cir. 1997). "Matters of the choice between competing inferences, the credibility of the witnesses, and the weight of the evidence are within the province of the jury, and [the court is] not entitled to second-guess the jury's assessments." United States v. Rea, 958 F.2d 1206, 1221-22 (2d Cir. 1992) (citations omitted); see also United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003) (instructing that "[c]ourts must be careful to avoid usurping the role of the jury when confronted with a motion for acquittal").

The government is entitled to prove its case solely through circumstantial evidence, provided, of course, that the government still demonstrates each element of the charged offenses beyond a reasonable doubt. See United States v. Lorenzo, 534 F.3d 153, 159 (2d Cir. 2008); United States v. James, 239 F.3d 120, 123-24 (2d Cir. 2000) (on a challenge to the sufficiency of the evidence, the court "is required to view the evidence, whether direct or circumstantial, in the light most favorable to the government, crediting every inference that could have been drawn in its favor"). Moreover, the testimony of one witness is sufficient to convict. See United States v. Riggi, 541 F.3d 94, 110 (2d Cir. 2008) (holding that conviction may be supported by "uncorroborated testimony of a single accomplice" and that lack of corroboration "goes merely to the weight of the evidence, not to its sufficiency").

The high standard of deference to the jury's verdict in evaluating sufficiency claims is "especially important when reviewing a conviction of conspiracy." United States v.

Lombardozzi, 491 F.3d 61, 67 (2d Cir. 2007) (quoting United States v. Pitre, 960 F.2d 1112, 1121 (2d Cir. 1992)). The Second Circuit has held that such deference is particularly appropriate in those cases "because a conspiracy by its very nature is a secretive operation, and it is a rare case 'where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel.'" Id. (quoting United States v. Provenzano, 615 F.2d 37, 45 (2d Cir. 1980)).

B. The Evidence Was Sufficient to Establish the Defendants' Sex Trafficking Convictions

The evidence introduced by the government at trial overwhelmingly proved the defendants' guilt on each of the charges submitted to the jury. In seeking to overturn the jury's verdict, the defendants do not even attempt to identify any particular weakness in the government's evidence. Rather, they advance generalized arguments about the credibility of the victim-witnesses. See Rosalio Mot. at 4 (arguing that the testimony of Daisy, Fabiola and Delia "failed to establish any credible fact"); Osvaldo Mot. at 2-5 (arguing that the testimony of Veronica and Maria Rosalba was filled with "contradictions and outright lies"); Abel Mot. at 3 (claiming that Diana "lied" about Abel Romero-Melendez and that counsel effectively cross-examined her about certain purported contradictions).

The jury was permitted to make its own credibility determinations and draw its own inferences, and it did so in finding the defendants guilty. The jury's verdict necessarily reflects that it rejected these arguments and credited the victims' accounts as truthful. There is no basis on which to disturb that finding.

Rule 29 "does not provide the trial court with an opportunity to substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be

drawn for that of the jury." United States v. Truman, 688 F.3d 129, 139 (2d Cir. 2012) (quoting United States v. Guadagna, 183 F.3d 122, 129 (2d Cir. 1999)). The "proper place for a challenge to a witness's credibility is in cross-examination and in subsequent argument to the jury . . . not in a motion for a judgment of acquittal." Id. (internal citations and quotation marks omitted); see also United States v. Brown, No. 04 CR 801 (PKC, 2006 WL 2724025, at *5 (S.D.N.Y. Sept. 22, 2006) ("[A] court considering a motion under Rule 29 is foreclosed from taking up issues of credibility, and must defer to the jury's determination.").

The jury was plainly presented with evidence and testimony sufficient to assess the credibility of the witnesses at trial. Indeed, on cross examination and in the defense summations at trial, the defendants consistently attacked the credibility of the victim-witnesses and advanced the very same arguments they make in seeking to overturn the jury's verdict, including the victim-witnesses' alleged incentives to lie. See, e.g., Trial Tr. at 1556-1559 (arguing that the victim-witnesses were "interested witnesses" because of their application[s] for asylum to this country"); 1559-1569 (arguing that Maria Rosalba's testimony was not "consistent with somebody who is forced and threatened and coerced into prostitution"); 1585-1586 (arguing that a "critical reason" that the jury could not believe the victim-witnesses was that "the [g]overnment said, talk to us and we'll protect you. Talk to us and we'll let you stay here. Talk to us and we'll make your status legal in the United States. And we'll give you permission to work here in the United States . . . if ever there was an example of a quid pro quo this is [it]."); 1697 (urging the jury that the victim-witnesses were motivated by jealousy), 1699 (observing, "it's almost [as if] there's a coercive presence in this courtroom but it's not from the defense. [Delia] does not want to enter anything contrary to the Government's narrative."). Abel Romero-Melendez's motion frankly concedes that

such arguments were made before the jury. See, e.g., Abel Mot. at 3 (claiming, variously, that on cross-examination at trial, counsel "showed" various purported inconsistencies in Diana's testimony and that counsel "also showed that no one forced Diana to cross illegally into the United States").

That the jury heard and considered these arguments in rendering a verdict is appropriate, as the trial—and not a Rule 29 motion—is the proper venue for such arguments. See Truman, 688 F.3d at 138. The defendants cannot ask this Court to substitute its judgment of the witnesses' credibility merely because they are unhappy with the conclusion that the jury reached, particularly where, as here, the jury was presented with the very same arguments as those advanced in the defendants' motions. See, e.g., United States v. Jean, No. 19-CR-0123 (JS), 2020 WL 70921, at *4 (E.D.N.Y. Jan. 7, 2020) (denying Rule 29 motion because the jury was "entitled to weigh the evidence and decide the credibility issues for itself" and noting that counsel "vigorously cross examined" the witness "on any potential bias or ill will toward Defendant based upon their failed romantic relationship"); United States v. Carpenter, No. 18-CR-362 (ADS), 2019 WL 3216619, at *3 (E.D.N.Y. July 17, 2019) (denying motion for judgment of acquittal because "Rule 29 does not permit this Court to determine the credibility of a witness. Such a decision is the province of the jury."); United States v. Kaufman, No. 13 CR 411-02 (JMF), 2014 WL 2048198, at *5 (S.D.N.Y. May 19, 2014) (denying Rule 29 motion based on arguments that "amount[ed] to little more than rearguing points that were made to, and rejected by, the jury"); United States v. Hemmings, No. 07 CR 421 (NG), 2009 WL 3064792, at *2 (E.D.N.Y. Sept. 22, 2009) (denying Rule 29 motion because "any issues as to" the credibility of cooperator testimony, "and any inconsistencies in the evidence, was for the jury to resolve."), aff'd, 482 F. App'x

640 (2d Cir. 2012); United States v. Brown, No. 07-CR-874 (KAM), 2009 WL 2045378, at *14 (E.D.N.Y. July 9, 2009) (denying Rule 29 motion because "[i]t was entirely within the jury's purview whether or not to credit" law enforcement witness testimony and declining to "interject its own evaluation of the believability or reliability" of such testimony); United States v. Gotti, No. 02-CR-743 (RCC), 2005 WL 1214321, at *2 (S.D.N.Y. May 19, 2005) ("Gotti had his chance to make this credibility argument to the jury, and he did so. That the jury did not agree with him is not a reason to grant a new trial.").

The defendants do not attempt to argue that the testimony of any particular victim-witness was "incredible as a matter of law," meaning that it was "incredible on its face" or that it "def[ied] physical realities." Truman, 688 F.3d at 139. Nor could they, as each of the victim-witnesses testified about the circumstances of their own victimization at the hands of the defendants or other events which they personally observed. See United States v. Griffin, 194 F.3d 808, 817 (7th Cir. 1999) (testimony is incredible as a matter of law if "it would have been physically impossible for the witness to observe what he described, or it was impossible under the laws of nature for those events to have occurred at all") (internal quotation marks and citation omitted); United States v. Steele, 178 F.3d 1230, 1236 (11th Cir. 1999) ( "[F]or testimony of a government witness to be incredible as a matter of law, it must be unbelievable on its face and must relate to facts that the witness physically could not have possibly observed or events that could not have occurred under the laws of nature.") (internal quotation marks and citation omitted); see also United States v. Robinson, 749 F. App'x 35, 36–37 (2d Cir. 2018) (summary order).

Moreover, the testimony of each of the six victim-witnesses at trial was both credible and corroborated—not just by the testimony of the other witnesses but by the other

evidence introduced by the government, including border crossing records, telephone records, wire transfer records, and physical evidence recovered during the search of Abel Romero-Melendez's residence. This evidence included, among other things:

- Dozens of "chica cards" recovered during a search of Abel Romero-Melendez's residence, which were consistent in appearance with the witnesses' descriptions of the cards during trial. See, e.g., Tr. 236 (Daisy's testimony that delivery drivers advertised prostitution services by handing out "chica cards" – cards with "pictures of girls, like girls in bikinis" and "the number to call" on Roosevelt Avenue), 472 (Maria Rosalba's testimony that delivery drivers gave out cards on "Roosevelt in Queens"), Government Exhibit 205 (seized chica cards).
- Notebooks consistent with the witnesses' testimony listing delivery drivers' names and phone numbers. See, e.g., Tr. 265-266 (Daisy explaining, "[t]hey were small notebooks. So we would write down the name of the driver and then his or her number right next to that and then sometimes where they worked."); 789 (Delia testifying about notebooks with "the drivers' names and phone numbers"); Government Exhibits 201, 202, 208–213 (notebooks).
- Border crossing records reflecting attempts to cross the U.S./Mexico border with the defendants and the defendants' family members. See, e.g., Government Exhibits 379 (border crossing spreadsheet), 378 (border crossing chart) and 314-369 (Forms I-213 for encounters of defendants, coconspirators, and witnesses).
- Wire transfer records demonstrating (i) payments by the victim-witnesses to the defendants and the defendants' family members, (ii) payments originating from

the defendants' and victim-witnesses' addresses in Corona, Queens, and (iii) payments by the defendants to their family members in Mexico when they had no source of income other than proceeds of sex trafficking. See, e.g., Government Exhibits 401-409 (wire transfer records), 412 (wire transfer spreadsheet), 413 (wire transfer chart), 701 (stipulation concerning wire transfer records); Tr. 252-253 (Daisy's testimony), 488 (Maria Rosalba's testimony); 804-805 (Delia's testimony).

The jury's determination as to the credibility of these witnesses is controlling. Accordingly, the Rule 29 motions must be denied.

II. Abel Romero-Melendez's Motion for a New Trial Under Rule 33 Should Be Denied

Abel Romero-Melendez seeks a new trial pursuant to Rule 33 on the ground that, at trial, the government elicited testimony from Diana regarding Abel Romero-Melendez that was not reflected in the government's prior disclosures pursuant to 18 U.S.C. § 3500. The defendant's argument is replete with factual and legal errors and should be rejected in its entirety.

A. Relevant Facts

At trial, Diana testified that she travelled with Jose Miguel Melendez-Rojas and Abel Romero-Melendez to the United States. Tr. 1239-40. After she arrived in the United States, Diana lived in an apartment on Martense Avenue in Queens with Jose Miguel Melendez-Rojas, Rosalio Melendez-Rojas, and a woman ("Karina") who worked as a prostitute for Rosalio Melendez-Rojas. She testified that after a short time, Abel Romero-Melendez, and another woman ("Cristina" or "Estephanie") who worked as a prostitute for Abel Romero-Melendez, began to live with them in the same apartment. Tr. at 1262.

Diana testified that, while she was a minor and forced to work as a prostitute for the defendants, she was "punished" through brutal physical and sexual abuse in front of the other occupants of the residence, including Abel Romero-Melendez. Tr. 1261-62, 1274 (describing rape, being burned by a candle and cut with broken glass). Diana also testified that she was raped after her attempts to escape:

Q: Did either Miguel or Rosalio say anything to you?

DIANA: That I was going to pay for that as soon as we got home.

Q: Did something happen to you when you got home?

(Pause.)

DIANA: Yes.

Q: What happened?

(Pause.)

DIANA: He beat me and he raped me and everybody watched.

Q: Everybody in the house?

DIANA: Yes.

Tr. 1277-78. Abel Romero-Melendez alleges that these portions of Diana's testimony were false.

On cross-examination, counsel for Abel Romero-Melendez attempted to elicit that law enforcement reports and notes of Diana's statements did not reflect her statement that Abel Romero-Melendez was "present during these alleged rapes." Tr. 1325. On

redirect, Diana testified that she had been raped by Jose Miguel Melendez-Rojas multiple times and that Abel Romero-Melendez had been present:

Q: Diana, you testified earlier today about a rape that occurred in front of other people you were living with. Do you remember that?

DIANA: Yes.

Q: Did it happen before or after Abel arrived in the United States?

DIANA: That was after Abel arrived.

Q: Was it just once, or were there several occasions where you were raped?

DIANA: It was several times.

Tr. 1342-43.

B. Legal Standard

Rule 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." The Second Circuit has held that "[g]enerally, a motion for a new trial 'should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" Smith v. Carpenter, 316 F.3d 178, 183 (2d Cir. 2003) (quoting Atkins v. New York City, 143 F.3d 100, 102 (2d Cir. 1998)). Though the Court is entitled to "weigh the evidence and in so doing evaluate for itself the credibility of the witnesses," United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992) (quoting United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980)), the Court "must strike a balance between weighing the evidence and credibility of witnesses and not 'wholly usurping' the role of the jury," United States v. Ferguson, 246 F.3d 129, 133 (2d Cir. 2001).

A trial court's discretion to grant a new trial under Rule 33 must be "exercised sparingly," and "only with great caution and in the most extraordinary circumstances." Sanchez, 969 F.2d at 1414. "The defendant bears the burden of proving that he is entitled to a new trial under Rule 33," United States v. McCourty, 562 F.3d 458, 475 (2d Cir. 2009), and the crucial question for the court is whether "it would be a manifest injustice to let the guilty verdict stand." Sanchez, 969 F.2d at 1414. A "manifest injustice" occurs where a trial court cannot be satisfied that "competent, satisfactory and sufficient evidence" supports the jury's finding of guilt beyond a reasonable doubt, and where a "real concern" exists "that an innocent person may have been convicted." Id.

C. Abel Romero-Melendez's Motion Should Be Denied

Abel Romero-Melendez seeks a new trial pursuant to Rule 33 based on the "false testimony of Diana," Abel Mot. at 4, and the government's alleged failure to disclose materials pursuant to 18 U.S.C. § 3500. This argument is nonsensical, not least because Abel Romero-Melendez fails to identify any materials that should have been disclosed by the government in advance of trial.

The Jencks Act provides that "[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). A "statement" includes a verbatim transcription of an oral statement. See 18 U.S.C. § 3500(e). Abel Romero-Melendez does not and cannot argue that the government failed to provide any § 3500 materials in its possession. Rather, he appears to suggest that he was entitled to a more detailed preview before trial of Diana's expected testimony.

This argument has no basis in law or fact. First, the government is not required to provide the defense with a preview of its witnesses' anticipated testimony. See, e.g., United States v. Sindone, No. 01-CR-517 (MBM), 2002 WL 48604, at *1 (S.D.N.Y. Jan. 14, 2002) ("[T]he government is not required to turn over information that will permit a defendant to preview the government's case and tempt him to tailor proof to explain it away, or see to it that the government's proof is not presented."). Abel Romero-Melendez's suggestion that the government was required, prior to trial, to present him with every detail of the substance of Diana's anticipated testimony regarding the physical and sexual violence she endured while living with the defendants for nearly a year in Queens has no basis in the law.

Second, the government did provide the defendants with such a preview through early disclosure of witness statements pursuant to 18 U.S.C. § 3500. As just one example, the affidavit submitted by Diana in support of the extradition of Jose Miguel Melendez-Rojas, Jose Osvaldo Melendez-Rojas and Rosalio Melendez-Rojas notes that on "at least three occasions," Jose Miguel Melendez-Rojas raped Diana "when he was not satisfied with the amount of money" she had earned. See 3500-Diana-1 at ¶ 8.

In making his Rule 33 motion, the defendant fails to identify any material that should have been disclosed by the government prior to trial and simply argues that Diana's testimony regarding her forced prostitution and sexual assaults were not credible. Such arguments are nothing more than a repetition of his counsel's cross-examination of Diana (see Tr. 1324 (Q: Do you remember that you never told the government agents that anybody was present during these alleged rapes?)) and closing argument that Diana's testimony was incredible, an argument that was presented to and rejected by the jury. Diana's credibility

was amply demonstrated by, among other things, her demeanor on the stand, her lack of any motive to lie, and her corroboration with testimony from other witnesses and other trial evidence.[3]

Abel Romero-Melendez does not assert any grounds upon which to conclude that the jury's verdict represents a "manifest injustice," nor does he argue that such an injustice took place. As there are no exceptional circumstances or any "concern that an innocent person may have been convicted," Sanchez, 969 F.2d at 1414, the Court should deny his motion.

[3] As the Court is aware, Diana found these subjects particularly painful to testify about and, at times, Diana had difficulty speaking and wept. See, e.g. Tr. 1253 (discussion outside the presence of the jury regarding pauses in Diana's testimony and Diana's obvious unhappiness); Tr. 1342 (Diana's testimony acknowledging that discussing rape made her upset). The jury had a full opportunity to observe Diana testify and to assess her demeanor as she testified regarding the horrific sexual abuse she suffered. The defendant's argument that she was not credible was presented to the jury but was rejected.

CONCLUSION

For the reasons set forth above, the government respectfully submits that the defendants' motions are without merit and should be denied.

Dated: Brooklyn, New York
April 9, 2020

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Tanya Hajjar
Erin A. Argo
Gillian Kassner
Assistant U.S. Attorneys
(Of Counsel)