**Federal Defenders**
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

September 12, 2021

**FILED ON ECF**
The Honorable Judge Ross
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    United States v. Fabian Reyes Rojas
              Criminal Docket No. 17-CR-434 (ARR)

Dear Judge Ross:

    Fabian Reyes Rojas, at 41 years old, comes before this Court having committed atrocious and devastating crimes for which he knows he must face punishment. He asks that the Court, in determining what punishment is just, consider the totality of his life history and his sincere remorse. He asks that the Court look not only at the crimes he committed but also look at him through the lens of his loving family and look at both his underwhelming criminal history and overwhelming track record as a hardworking laborer. Nothing Mr. Reyes Rojas can say or do can ever erase his crimes or their far reaching harm, and he offers no excuses to do so.

    The punishment that Mr. Reyes Rojas faces is substantial, 15 years of incarceration and certain deportation back to Mexico, back to extreme poverty and lack of opportunity and security that he worked so hard to leave behind and support his remaining family through. All of the hope that Mr. Reyes Rojas had for himself and his family stemmed from the desire to come to the United States and live a better life that he could share with his loved ones back home. His criminal activity has made that impossible – it has not only impacted his own future but that of his family, especially his children.

    While his family's well-being has a source of daily anxiety, Mr. Reyes Rojas's shame and remorse is overwhelming. In the years that he has had to reflect on his life – the dual identities he had as both loving, generous family member and someone capable of harming the victim in this case and participating in this conspiracy – he has been forced to fully realize that his kindness to his loved ones cannot make up for the harm he inflicted on others.

    Mr. Reyes Rojas has been incarcerated at the Metropolitan Detention Center for over four years. He has lived through the blackout that terrified and traumatized inmates in the frigid months of winter in 2019 and the ongoing lockdowns that resulted from the COVID-19

pandemic over the past year and a half. During those four years, he has had nothing but time to think about how and why he came to be incarcerated under largely inhumane conditions. He has lived those years with humility and deep penance. Of his co-defendants he is the only one to plead guilty, accept full responsibility for his crimes and spare his victims the additional trauma of a trial.

In considering not just Mr. Reyes Rojas's crimes but his remorse and his personal history, a 15-year sentence is a sentence sufficient but not greater than necessary to achieve the goals of sentencing. It is a significant sentence that adequately punishes him for his crimes and the severe consequence of deportation is additional punishment that acts both as a specific and general deterrent.

## I. Fabian Reyes Rojas's Life Growing Up in Poverty Stricken Tlaxcala Mexico

Fabian Reyes Rojas was born and raised in Tlaxcala Mexico, a small but densely populated state in Mexico. Tenancingo, the town in Tlaxcala where he lived, is plagued by overwhelming poverty – more than half the population lives in moderate poverty with fully six percent of the population suffering from extreme poverty.[1] Even today, portions of the population are cut off from sewage systems, have no running water, no bathrooms and no electricity.[2] It was in this environment that Fabian grew up, one of six children. His father worked long hours at a factory and his mother stayed home to care for him and his siblings. All the children including Fabian were forced to leave school early to help provide for the family – Fabian concluding his education after only eight years.

While Fabian's family structure instilled in him the value and importance of hard work, the world in which he grew up illuminated a different reality. For more than half a century the poverty stricken town of Tenancingo has been infamous for its ties to international trafficking. Young boys aspire to be traffickers and young women fall victim to the sex trade.[3] The allure of the sex trafficking trade is so deeply woven into the fabric of the culture of the town that the bulk of the town's income stems from international sex trafficking.[4] Not only has law enforcement mostly turned a blind eye to trafficking but the government and police force have been linked to the criminal enterprise as well. For Fabian and other young men growing up in Tenancingo trafficking was the opportunity to escape extreme poverty, it was a business that provided a chance at economic security – an elusive goal that his family constantly chased but seemingly could never achieve despite tireless efforts to do so.

Fabian's desperate desire to improve his own life and the life of his family arose at a young age –when he moved out of his parents' home, he left the town and continued to work. He eventually came to the United States hoping to find additional opportunity here. Throughout his time in the United States, not unlike his time in Mexico, he worked labor intensive, low paying jobs, sending money home to his family in Mexico who relied on him for financial support. As a father of three, a son, brother and uncle, Mr. Reyes Rojas often felt the crushing responsibility of

---

[1] Data Mexico: Tenancingo, available at: https://datamexico.org/en/profile/geo/tenancingo-29027
[2] *Id.*
[3] The Mexican Town Where Nearly All Boys Grow Up to be Pimps, World, available at: https://wng.org/sift/the-mexican-town-where-nearly-all-boys-grow-up-to-be-pimps-1617739831
[4] *Id.*

2

caring for his loved ones. The desire to meet that responsibility, while honorable, led him to make the terrible choice to engage in the criminal activity that surrounded him growing up and had followed him into his new life into America.

### II. Mr. Reyes Rojas and the Instant Offenses and His Subsequent Arrest and Conviction

Mr. Reyes Rojas is deeply remorseful for the pain and anguish that he caused the victims, young women with dreams and aspirations for a better life, not unlike the ones he had as a young man leaving his parents' home. He recognizes that he is responsible for crushing those dreams, hurting them and forever changing their lives. As the father of three daughters he is horrified by his choices and the previous rationalizations he made to justify them. He wishes for a better life for his daughters than the lives of the young women harmed. It is impossible for him not to think of these young women in the countless hours he has spent in his cell. He remains angry with himself and despondent over his crimes and the impact that they have caused.

When Mr. Reyes Rojas was arrested 4 years ago, he knew that it would be years before he saw his children or his family again. He struggled with coming to terms with that and struggled with how to confront not just his future but also his past. How and why did he make these choices? Why did he rationalize that his needs were worth the abandonment of his principles, or the destruction of the lives of others?

As the years went by Mr. Reyes Rojas rediscovered his humility, and the gentle and kind spirit that his family has experienced him to be. In December 2019, Mr. Reyes Rojas took responsibility for his role in these offenses and pled guilty. In doing so he accepted that he would not be released from prison for at least 15 years. That he would not see his wife, daughters, niece, siblings or parents for at least 15 years. That he would be locked away from the world unable to work to support any of his loved ones for 15 years. Mr. Reyes Rojas made this choice because he knew that it was the only correct choice he could make when confronted with the opportunity to go to trial. He did not want to put the victims through the further pain of coming to court to testify, he did not want to proclaim innocence that he did not have, he wanted to do the only thing he could think of to even begin to make amends for his crimes.

### III. Mr. Reyes Rojas's Time at the MDC – Through the Blackout and the Pandemic Lockdowns

Since his initial incarceration at the MDC in 2017 Mr. Reyes Rojas has principally only received visits from counsel and legal staff. Still, he felt grateful that he was able to communicate with his family over the phone. It has always been difficult to be a father to his daughters from another country but he could not have imagined how impossible it would feel to do so from a prison cell in another country.

In late January 2019 Mr. Reyes Rojas and at least 1,600 inmates were subjected to the inhumane conditions caused by the blackout at the MDC. Kept in their dark and freezing cold cells for 23 hours a day without explanation about why or when it would end, sent all of the inmates into a panic. For Mr. Reyes Rojas and other inmates who did not speak English, they

truly felt completely kept in the dark. This experience both terrified and further humbled him. However it would not be the only dark period of his incarceration.

      A little over a year later, COVID-19, the worldwide health pandemic that has claimed lives across the globe, hit the United States with full force. In response the Bureau of Prisons went on lockdown. As a result, Mr. Reyes Rojas has been incarcerated in prison conditions vastly more dangerous, less rehabilitative and more isolating than can be reasonably expected in the Federal Bureau of Prisons. More than 45,000 federal inmates currently incarcerated in the BOP (and thousands more who have since been released) have had confirmed positive test results for COVID-19. *See COVID-19: Coronavirus*, Federal Bureau of Prisons (May 24, 2021), at https://www.bop.gov/coronavirus/. 236 federal inmates have died from the virus. *Id.* The "rate of infection in the Bureau of Prisons is almost six times higher than the national average." *United States v. Lockhart*, 2020 WL 4333010, at *2 (E.D.N.Y. July 29, 2020). Many BOP facilities have suffered widespread outbreaks of hundreds—indeed, thousands—of cases, spread all throughout the country. *See id.* (*e.g.* FCI Fort Dix: 1992 positive inmates; FCI Seagoville: 1145 positive inmates; USP Tucson: 870 positive inmates; USP Leavenworth: 827 positive inmates; USP Marion: 744 positive inmates; FCI Pekin: 733 positive inmates; FCI Florence: 724 positive inmates; FMC Lexington: 721 positive inmates; FMC Carswell: 716 positive inmates; FCI Oxford: 652 positive inmates; USP Terre Haute: 652 positive inmates; FCI Greenville: 650 positive inmates; FCI Big Spring: 635 positive inmates; FMC Fort Worth: 631 positive inmates; FCI Sandstone: 629 positive inmates; FCI Englewood: 615 positive inmates; FCI Loretto: 611 positive inmates; FCI Pollock: 602 positive inmates; FCI Victorville Medium I: 602 positive inmates; 12 facilities with 500–600 positive inmates; 12 facilities with 400–500 positive inmates; 19 facilities with 300–400 positive 7 inmates; 23 facilities with 200–300 positive inmates; and 26 facilities with 100–200 positive inmates). MDC Brooklyn, where Mr. Reyes Rojas has been housed, is among them: 395 inmates and 117 staff members have contracted the virus; 1 inmate has died. *See May 20, 2021 Report Pursuant to Admin.Order No. 2020-14*, Federal Bureau of Prisons (May 20, 2021), *at* https://www.nyed.uscourts.gov/pub/bop/20210520_BOP_Report.pdf.

      The fear pervading the prison environment of becoming ill and dying, especially in the early months of the virus when little was known about how it would spread, was gripping. Mr. Reyes Rojas, like many other inmates, spent days and nights petrified that they would never see their loved ones again. Mr. Reyes Rojas worried about his family in Mexico who was already struggling financially, and particularly his parents who were already struggling with their health. He worried about never seeing his children again.

      In an effort—and not a particularly successful effort—to mitigate the spread of the virus, the BOP has enacted significant measures restricting the liberty of inmates. Mr. Reyes Rojas spend over a year in near-isolation conditions tantamount to disciplinary segregation. For much of that time, inmates were confined to their cells 24 hours a day, 7 days a week, with the exception of 30 minutes, three times a week, for showers, or in lieu of a shower, a quick telephone call. Conversely, prior to the pandemic, inmates were permitted out of their cells from 6:00 AM until 3:30 PM, and then again from 5:00 PM until 9:30 PM. During that time, they could exercise, engage in programming, speak with their families, visit with their families, and seek meaningful rehabilitation. Since the onset of the pandemic defendants are quarantined for

lengthy periods of time before being assigned to a unit, and then must test negative to enter the unit. There, they are cohorted with a set group of individuals. The restriction, during waking hours, from 14 hours a day, seven days a week out of the cell to 30 minutes a day, three times a week, is significantly harsh, and unwarranted. It has meant that time served during this period is undeniably more difficult, in every way, than prior to the pandemic.

The lack of contact with the outside world was particularly heart-wrenching for Mr. Reyes Rojas who primarily relied on phone calls to have any contact with his loved ones. In addition, Mr. Reyes Rojas recently learned that his father passed away. The devastating news made the reality of the length of his incarceration hit home hard. Reading his father's letter to the Court begging to be able to see him again and knowing that wish was never fulfilled because of the choices he made, broke Mr. Reyes Rojas's heart. While he had known it would be unlikely that he would be released to see his parents again, he still held on hope. The loss of his father crushed that hope and the inability to grieve with the family, attend the funeral or say goodbye has left him inconsolable. He now thinks of his mother, and wonders if he will experience the same loss while incarcerated far away from her in another country.

IV.     The Appropriate Guidelines in Mr. Reyes Rojas's Case

Probation calculates Mr. Reyes Rojas's guidelines to be a total offense level of 33 and Calculates his criminal history Category to be I, resulting in a guideline range of 135 to 168 months. However, the mandatory minimum for these offenses is 180 months, making the applicable guideline range 180 months.

Mr. Reyes Rojas objects to one aspect of Probation's calculation – the applicability of the victim related adjustment. Probation determines that Mr. Reyes Rojas should receive a 2-point enhancement because the crime involved a vulnerable victim as described under U.S.S.G Section 3A.1.1. U.S.S.G. Section 3A.1.1 states that the enhancement applies "if the defendant knew or should have known that the victim of the offense was a vulnerable victim." The guidelines define a vulnerable victim as a victim of the offense of conviction and any conduct for which the defendant is accountable under Section 1B1.3, who is "unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct."

As noted in the Presentence Report, Mr. Reyes Rojas pled guilty to the sex trafficking conspiracy with respect to the adult victims and "is only responsible for the sex trafficking of one victim, Jane Doe #6" which results in a calculation under Count 3 for Jane Doe #6.[5] While there is no doubt that Jane Doe #6 is a victim under the definition of the enhancement and no objection that she was "young, poor, uneducated and from an impoverished area in Mexico", she is not vulnerable as defined by the guidelines. Nothing about Jane Doe #6's age, physical or mental condition or anything otherwise made her particularly susceptible to the criminal conduct here. The sentencing court must look at the individual circumstances of the victim and not apply the enhancement because the defendant falls within a population of individuals and is meant to apply when the vulnerability makes the offender more culpable than they would otherwise be in committing the offense. *See United States v. Morrill* 984 F.2d 1136 (11th Cir. 1993). *See also*

---

[5] Presentence Report p.18, par. 81.

5

*United States v. Sabatino*, 943 F.2d 94, 103 (1st Cir. 1991) (vacating sentence where Court applied two-level enhancement after finding that the fact that the youngest prostitutes were 18 and were mothers of small children did not make them unusually vulnerable); *United States v. Scott*, 529 F.3d 1290, 1303 (10th Cir. 2008) (finding that the victim's small stature, and that she was unusually naïve and immature was what made her unusually vulnerable to trafficking, not solely her age, 13, at the time).

Without the two-point enhancement, Mr. Reyes Rojas's total offense level should be 31. With a Criminal History Category of I, Mr. Reyes Rojas's guideline range would be 108-135 months, however because the statutory mandatory minimum is 180 months, his guideline range would remain the same.

### V.    An Appropriate Sentence for Mr. Reyes Rojas – 180 months

Mr. Reyes Rojas must serve 15 years in prison as a result of the mandatory minimum applicable in this case. The Court should find that this sentence is sufficient but not greater than necessary to achieve the goals of sentencing in this case. As previously discussed,15 years is a lengthy period of punishment, particularly for a man with limited criminal history whose longest period of incarceration prior to this was only 30 days. This sentence prioritizes punishment and deterrence but allows for the chance of rehabilitation.

Mr. Reyes Rojas has been in custody since his arrest in July 2017, already over four years. Even after he completes his sentence for this case he will likely be detained for an additional period of time while he awaits deportation. In determining whether and how much longer Mr. Reyes Rojas need be incarcerated in these conditions, the court should weigh the increased danger and diminished conditions to which he would be subjected when determining the "total harm and benefits to prisoner and society" that additional imprisonment would yield. *United States v. D.W.*, 198 F. Supp. 3d 18, 23 (E.D.N.Y. 2016); *see Davis v. Ayala*, 135 S. Ct. 2187, 2209 (2015) (Kennedy, J., concurring) (calling for heightened judicial scrutiny of the projected impact of jail and prison conditions on a defendant); *United States v. Mateo*, 299 F. Supp. 2d 201, 212 (S.D.N.Y. 2004) (reducing sentence where defendant's pretrial conditions were "qualitatively more severe in kind and degree than the prospect of such experiences reasonably foreseeable in the ordinary case"); *United States v. Francis*, 129 F. Supp. 2d 612, 619-20 (S.D.N.Y. 2001) (reducing sentence in acknowledgment of "the qualitatively different, substandard conditions to which the Defendant was subjected" in pretrial detention). As Judge Rakoff recently held, "The pandemic, aside from posing a threat to [the defendant's] health, has made…incarceration harsher and more punitive than would otherwise have been the case. This is because federal prisons, as 'prime candidates' for the spread of the virus (citation omitted), have had to impose onerous lockdowns and restrictions that have made the incarceration of prisoners far harsher than normal." *United States v. Rodriguez*, 2020 WL 5810161, at *3 (S.D.N.Y. Sept. 30, 2020).

In recognition of the excessively punitive conditions of pretrial detention during the pandemic, judges in this and the Southern District have granted leniency in similar or even more

serious cases.[6] Judges have acknowledged that the unusual harshness of incarceration during these times diminishes the retributive or deterrent need for a guidelines sentence. And they have imposed terms of imprisonment, including time-served sentences, that are substantially less than the bottom of the defendants' advisory ranges. *E.g.*, *United States v. Colon*, 15-CR-317 (MKB) (E.D.N.Y. Nov. 20, 2020) (imposing 18 months, consecutive to defendant's 18-month state sentence, where bottom of guidelines was 100 months); *United States v. Shi*, 19-CR-451 (PKC) (E.D.N.Y. Nov. 2, 2020) (imposing no prison where guidelines range was 12-18 months); *United States v. Piper*, 18-CR-008 (AMD) (E.D.N.Y. June 25, 2020) (imposing time-served sentence on resentencing where defendant had served approximately 24 months and bottom of guidelines range was 63 months); *United States v. Vinas*, 20-CR-44 (EK) (imposing three-month sentence where bottom of guidelines range was eight months) (E.D.N.Y. Apr. 20, 2020). *See also, e.g.*, *United States v. Almonte*, 19-CR-621 (RA) (S.D.N.Y. Jan. 14, 2021) (imposing 15-month sentence where bottom of guidelines range was 51 months); *United States v. Garcia*, 19-CR-593 (PAC) (S.D.N.Y. Dec. 3, 2020) (imposing 48-month sentence where bottom of guidelines range was 110 months); *United States v. Camacho*, 19-CR-389 (CM) (S.D.N.Y. Nov 19, 2020) (imposing time-served sentence where bottom of guidelines range was 57 months); *United States v. Paulino*, 19-CR-607 (AJN) (S.D.N.Y. Oct. 21, 2020) (imposing time-served sentence where bottom of guidelines ranges was 27 months); *United States v. Cirino*, 19-CR-323 (JSR) (S.D.N.Y. July 21, 2020) (imposing 10-month sentence where bottom of guidelines range was 57 months); *United States v. Aracena de Jesus*, 20-CR-19 (PAE) (S.D.N.Y. July 1, 2020) (imposing time served sentence where bottom of guidelines range was 30 months); *United States v. Casillas*, 19-CR- 836 (S.D.N.Y. May 4, 2020) (imposing time-served sentence where bottom of guidelines range was 15 months).

When considering the conditions under which Mr. Reyes Rojas was incarcerated for the past two years, his sincere remorse and his personal history, a sentence of 15 years is an appropriate sentence in this case after careful consideration of the 18 U.S.C Section 3553 factors.

**VI. Conclusion**

For all the reasons included in this submission we ask that the Court sentence Fabian Reyes Rojas to the mandatory minimum for these offenses, 15 years.

Respectfully submitted,

/s/ Amanda David
Amanda David
Counsel for Fabian Reyes Rojas
718.330.1208

Cc: AUSAs Tanya Hajjar, Erin Argo, Gillian Kassner
Senior United States Probation Officer Jennifer Fisher

---

[6] *See also* Judge says 'morons' run New York's federal jails, denounces 'inhuman' conditions. The Washington Post, May 7, 2021, available at: https://www.washingtonpost.com/national-security/jails-run-by-morons-judgesays/2021/05/07/3b8b00c4-af46-11eb-acd3-24b44a57093a_story.html